USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/08/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
TIFFANY WILSON, on behalf of herself and all : 
others similarly situated, :
 :
                                 Plaintiff, :    21-CV-5930
 :
               -against- :    OPINION AND ORDER
 :
MASTERCARD INC., and MASTERCARD :
INTERNATIONAL INC., :
 :
                              Defendants. :
------------------------------------------------------------ X

VALERIE CAPRONI, United States District Judge:

Plaintiff Tiffany Wilson sued[1] Mastercard, Inc. and Mastercard International, Inc. (collectively "Mastercard") in a putative class action for unjust enrichment and violations of the North Carolina Unfair Trade Practices Act ("NCUTPA"). *See* Am. Compl., Dkt. 39 at ¶ 70, 86. Defendants Mastercard moved to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and 9(b), arguing that Plaintiff has failed to allege adequate facts to plausibly support a claim for relief. *See* Defs. Mem. of Law, Dkt. 46. Plaintiff opposed the motion. *See* Pl. Opp. Dkt. 52. Because the Plaintiff has failed to allege facts from which the Court can plausibly infer that she has suffered the requisite injury-in-fact to have standing, the case is DISMISSED without prejudice. The Court declines to rule on Defendants' arguments under Rule 12(b)(6) and 9(b) because it lacks subject-matter jurisdiction.

---

[1] On the same day this action was filed, Plaintiff's counsel filed numerous other actions alleging substantively similar claims against various financial institutions. *See Chakraborty v. Visa, Inc.*, No. 4:21-cv-5302 (N.D. Cal.); *Wright et al. v. Capital One Bank (USA) and Capital One Bank, N.A.*, 21-cv-803 (E.D. Va.); *Chakraborty v. TD Bank, N.A.*, No. 1:21-cv-13492 (D.N.J.) (dismissed on July 13, 2021); *Dahl v. JPMorgan Chase Bank N.A.*, No. 1:21-cv5933 (S.D.N.Y.) (dismissed on Jan. 28, 2022); *Guerrero v. Bank of Am.*, N.A., No. 3:21-cv-333 (W.D.N.C.) (Report and Recommendation recommending dismissal entered on July 1, 2022, *see* Mem. & R., Dkt. 38).

**BACKGROUND**

Between November 2018 and February 2020, Plaintiff had a Mastercard credit card issued by Capital One.  Am. Compl., Dkt 39 ¶ 27.  During this time, Plaintiff claims that Mastercard assessed an improperly high currency exchange rate "on numerous occasions" for transactions "in a number of foreign currencies."  Am. Compl., Dkt. 39 at ¶ 27.

Both parties agree that Mastercard processes transactions made in a foreign currency by using an exchange rate that is based upon currency prices that exist in the market on the date the transaction is processed.  *See id.* at ¶ 21; *see also* Defs. Mem. of Law, Dkt. 46 at 22–24.  Plaintiff alleges, however, that at all times relevant to this lawsuit, Mastercard selected a bid price (the price received when currency is sold) and an ask price (the higher price paid when currency is purchased) to maximize the bid-ask spread (the cost of transacting in a foreign currency) to the detriment of the cardholder and to the advantage of Mastercard.  *See* Am. Compl., Dkt. 39 at ¶¶ 11–15; SEC, *Investor Bulletin: Foreign Currency Exchange (Forex) Trading for Individual Investors 2* (July 2011).

According to Plaintiff, the resulting profits from this practice are disproportionate to the costs and risks Mastercard incurs from currency conversions.  *See* Am. Compl., Dkt. 39 at ¶ 20, 39.  Plaintiff alleges that Mastercard often settles foreign transactions in U.S. Dollars, and even, when it does not, it is only required to exchange the net amount of foreign currency required to settle currency deficits at the end of a given day.  *See id*. at ¶¶ 16–18.  Thus, if Mastercard customers collectively buy and sell products that cost 100 Mexican pesos on a given day, Mastercard does not have to exchange any pesos that day, even though each Mastercard customer would have been charged the applicable exchange rate for his or her foreign currency transaction.  In addition, Plaintiff alleges, even if there is a net imbalance of currency at the end

of the day that Mastercard must settle in foreign currency, Mastercard may still not need to enter the foreign exchange market because (a) it maintains reserves of foreign currencies and foreign exchange derivative contracts that allow it to move fluidly between currencies and (b) it has the ability to enter into side transactions with other large financial institutions. *Id.* at ¶¶ 33–37. Thus, according to Plaintiff, Mastercard can pocket not only the revenues flowing from these inflated currency conversion fees, but also processing fees, which are assessed as a percentage of the total transaction cost. *Id.* at ¶ 18.

Ms. Wilson alleges that Mastercard caused her financial injury because its practice of maximizing its bid-ask spread violates its own procedures that require it to use "either a government mandated exchange rate or a wholesale exchange rate" on the day "that the Transaction is processed" when converting currency in order to process customer transactions. *Id.* at ¶ 44; *see also id.* at ¶¶ 4–5. Ms. Wilson also points to her Cardholder Agreement with Capital One, which she claims is reflective of Mastercard's standard cardholder agreement and references the Mastercard Rules. *Id.* at ¶¶ 47–48. The Cardholder Agreement obligates Mastercard to set a foreign exchange rate that is based on "(1) a wholesale market rate, or (2) a government-mandated rate." *Id.* at ¶ 89; *see also id.* at ¶¶ 32, 44.

Ms. Wilson alleges that she paid her credit card bill, including the overcharges, in reliance on the Cardholder Agreement provided to her by Capital One, the Mastercard Rules referenced in the Cardholder Agreement, and her billing statements. *Id.* at ¶¶ 7–10, 97. She alleges that she was deceived because those statements did not reflect that Mastercard was charging an exchange rate that was not "a wholesale market rate selected in good faith." *Id.* at ¶ 97.

Ms. Wilson offers a mix of conclusory allegations to support her claim that Mastercard overcharged her. First, she alleges that on October 17, 2019, she used her Mastercard credit card to conduct a transaction in Vanuatu vatu and, after the conversion to U.S. dollars, was charged $515.48.[2] *Id.* at ¶ 27. She asserts that this exceeded the amount that she would have been charged had Mastercard used a foreign transaction rate within the range of rates set by the wholesale market that day. *Id.* Ms. Wilson also alleges that, according to her independent analysis of historical data available through Mastercard's online currency converter, Mastercard's exchange rates for unspecified currencies "fell outside of the daily range of wholesale market rates on the applicable processing date" for "a majority of days and for analyzed currencies" over "the relevant time period." *Id.* at ¶ 53. In particular, she alleges that she found that the exchange rate for Euros to Dollars between October 2017 to September 2018 "was higher than the range of rates available in the wholesale FX market for the applicable date on 41 percent of analyzed dates." *Id.* at ¶ 54.[3]

Ms. Wilson alleges that Mastercard's practice of systematically overcharging cardholders in violation of its stated currency conversion practices unjustly enriched Mastercard and violated NCUTPA, N.C. Gen. Stat. § 75-1.1. *Id.* at ¶¶ 70–85, 86–99. Ms. Wilson purports to bring claims on behalf of a nationwide class, which broadly includes all those who lived in the United

---

[2] Vanuatu vatu is the official currency of Vanuatu, an island in the southwestern Pacific Ocean. *See Vanuatu*, Britannica (Mar. 10, 2021), https://www.britannica.com/place/Vanuatu.

[3] The Amended Complaint does not allege exactly what Plaintiff used as the "wholesale FX market." She attempted to remedy that defect in her Opposition to Defendants' Motion to Dismiss. She claims there that the Amended Complaint establishes that the appropriate benchmarks against which Mastercard's foreign exchange rates should be measured are the foreign exchange rates published by Reuters and Bloomberg. *See* Pl. Opp., Dkt. 52 at 22. But the Amended Complaint is not so definitive; it vaguely references "major multi-bank FX trading platforms including Reuters and Bloomberg" as possible benchmarks, but never alleges precisely what benchmark she used in her analsysis. Am. Compl., Dkt. 39 at ¶ 33; *see also id.* at ¶ 56 (again referencing "wholesale FX market data from third-party providers, including Bloomberg and Reuters").

States and used their Mastercard credit cards to transact in foreign currencies during the applicable statute of limitations, and a North Carolina class, limited to all those who lived in North Carolina and used their Mastercard to transact in foreign currencies during the applicable statute of limitations.  *Id.* at ¶¶ 60–61

## DISCUSSION

**I.  Legal Standard To Plead Adequately Article III Standing**

Pursuant to Article III of the United States Constitution, federal courts may only hear "cases" and "controversies."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 576 (1992).  To ensure the existence of a case or controversy, the Court must make an initial threshold determination whether the plaintiff has standing to sue.  *Id.* at 560–61.  To have standing, a plaintiff must adequately allege: (1) a concrete, particularized, actual, or imminent injury-in-fact; (2) a causal connection between the injury and the conduct complained of such that the injury is "fairly traceable to the challenged action of the defendant;" and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision from the Court.  *Id.* (internal quotation marks omitted).  Because this is a putative class action, plaintiff must also allege that she "personally has suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant, and . . . such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants."  *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 563 (S.D.N.Y. 2016) (internal quotations omitted).

Although neither party addressed whether Plaintiff has standing to sue, the Court appropriately raises the question of standing *sua sponte* because standing is a threshold issue of justiciability.  *Thompson v. Cty. of Franklin*, 15 F.3d 245, 248 (2d Cir. 1994) (citing *Warth v.*

*Seldin*, 422 U.S. 490, 500 (1975)). If a plaintiff lacks standing to sue, the Court has no choice but to dismiss the plaintiff's claim for lack of subject-matter jurisdiction. *See Cent. States SE & SW Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005).

"The party invoking jurisdiction bears the burden of establishing that jurisdiction exists." *Buday v. N.Y. Yankees P'ship*, 486 F. App'x 894, 895 (2d Cir. 2012) (internal citation omitted). In evaluating whether the plaintiff has adequately alleged sufficient facts to support subject-matter jurisdiction at the pleading stage, the court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009) (quotation omitted). The Court should not, however, draw "argumentative inferences favorable to the party asserting jurisdiction." *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992) (citing *Norton v. Larney,* 266 U.S. 511, 515 (1925)); *see also Conyers,* 558 F.3d at 143 ("[E]ven on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation." (internal quotation marks omitted)).

To satisfy the first element of standing, Plaintiff must adequately allege that she suffered an injury-in-fact. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). This injury must be "concrete and particularized" and "actual or imminent — not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. To be "particularized," the injury "must affect the plaintiff in a personal and individual way." *Id.* at 561, n.1. At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Id.* at 561. The injury-in-fact must be "clearly alleg[ed]," which is a "lower threshold" than that for sustaining a cause of action. *Harry v. Total Gas & Power N. Am.*, 889 F.3d 104, 110 (2d Cir.

2018). Nevertheless, the factual allegations must be sufficient to put injury-in-fact into the realm of the plausible.

Plaintiff's claims of unjust enrichment and unfair and deceptive practices under the NCUDPA are, at their core, allegations that Plaintiff (and others similarly situated) suffered financial injury because Mastercard manipulated its currency conversion practices to assess improperly high exchange rates. *See* Pl. Opp., Dkt. 52 at 7 ("Plaintiff and members of the Classes were thereby injured — in that they paid above wholesale market FX rates which differed from those they were promised."); *see also* Am. Compl., Dkt. 39 at ¶ 22, 76, 97.

## II. Plaintiff Fails to Allege Standing Because She Fails to Allege that She Actually Suffered a Concrete Financial Injury

To adequately allege standing, Plaintiff must allege facts from which the Court can plausibly infer either that Mastercard overcharged her for foreign transactions in which she engaged or that she regularly transacted with Mastercard in an environment of systematic fraud such that it is reasonable to infer that she was financially injured. *See Lujan*, 504 U.S. at 561 (1992) ("[G]eneral factual allegations of injury resulting from the defendant's conduct may suffice."); *In re Barclays Liquidity Cross and High Frequency Trading Litig.*, 390 F. Supp. 3d 432, 444–45 (S.D.N.Y. 2019). "While the standard for reviewing standing at the pleading stage is lenient, a plaintiff cannot rely solely on conclusory allegations or injury or ask the court to draw unwarranted inferences in order to find standing." *Baur v. Veneman*, 352 F.3d 625, 636–37 (2d Cir. 2003).

While courts "generally accept the truth of a plaintiff's allegations" at the pleading stage, they "need not credit . . . a naked assertion devoid of further factual enhancement" as plausible without reference to the broader factual context of the complaint. *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022); *see id.* at 72 (holding that vague and conclusory allegations

7

are insufficient "to satisfy the concrete-harm requirement" (internal quotation omitted)). In *Calcano*, the Second Circuit refused to credit as plausible plaintiffs' "vague assertions that they have been customers at Defendants' businesses on prior occasions" because plaintiffs failed to provide "*any* details about their past visits or the frequency of such visits" including details of "what items they purchased." *Id.* at 76–77; *see also Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011) (holding that one statement that the government unlawfully obtained all the data contained in a banking database, including plaintiff's, was insufficient to support standing when that statement was undermined by the rest of the complaint).

Plaintiff's most detailed allegation is that she was charged $515.48 for a purchase she made for an unspecified amount of Vanuatu vatu; that, Plaintiff claims, reflected an exchange rate "outside the range of wholesale market rates on the applicable date." Am. Compl., Dkt. 39 at ¶ 27; *see also* Pl. Opp., Dkt. 52 at 21. Plaintiff does not allege how much she was overcharged, the exchange rate she contends would have been appropriate, the date the transaction occurred or the date the transaction was processed by Mastercard, or even the amount in Vanuatu vatu of the item that she purchased.[4] Nevertheless, she asserts that she "paid more for this transaction than she would have paid had Defendants applied a rate that was actually present in the wholesale markets." Pl. Opp., Dkt. 52 at 21; *see also* Am. Compl., Dkt. 39 at ¶ 27.

Plaintiff's only other allegation that may be related to her own transactions alleges that she has determined that on a "majority of days" over the "relevant time period" — presumably, but not obviously, the time during which she used her Mastercard credit card for foreign transaction — Mastercard assessed foreign exchange rates that were unfairly high for unspecified currencies. Am. Compl., Dkt. 39 at ¶¶ 22, 52–53. Plaintiff does not state whether this analysis

---

[4]   Plaintiff does provide the date on which the transaction was "posted" to her Capital One credit card account. Am. Compl., Dkt. 39 at ¶ 27.

8

applies to the Vanuatu vatu nor does she allege that she made any purchases in any of the unspecified currencies that she analyzed.[5] Nor do her conclusory allegations arising from a purportedly "detailed analysis of Mastercard's publicly available historical exchange rates" allege the sort of systematic fraud recognized in other cases as sufficient to render claims of injury plausible when plaintiffs were also regularly transacting in the relevant market. Ms. Wilson's allegations are only slightly more detailed than those made in *Calcano*. *Id.* at ¶¶ 53 While she does allege that one transaction in Vanuatu vatu was posted to her bank account on October 17, 2019, *see id.* at ¶ 27, she offers no details to support her conclusory assertion that the currency conversion rate was higher than the applicable wholesale rate. In short, Plaintiff's allegations are insufficient for the Court to infer that he was overcharged by Mastercard during the one specific transaction that appears in the Amended Complaint.

Nor has she adequately alleged financial injury by alleging broad systematic fraud in a market in which she regularly transacts business. Courts in the Second Circuit have repeatedly held that complaints that neither detail financial losses from a specific transaction nor adequately allege that the plaintiff was "so frequently" a participant in the allegedly fraudulent market that injury can be inferred are inadequate to allege standing. *Amidax Trading Grp.*, 671 F.3d at 148 (2d Cir. 2011). In *Amidax Trading Group v. S.W.I.F.T. SCRL*, the court held that the plaintiff did not have standing to sue the Society for Worldwide Interbank Financial Telecommunication ("SWIFT") for unlawfully giving the government access to its databases when the plaintiff had not alleged that it "so frequently utilized the SWIFT network to transfer funds that it is plausible, not just possible, that Amidax's data was handed over." *Id.* at 147–48. Without allegations

---

[5] In Plaintiff's first Complaint, she alleged that she had also transacted in New Zealand dollars, Peruvian sol, and Chilean pesos, also without any details regarding the frequency, amounts, or dates of the transactions, or the amount that she was overcharged. Compl., Dkt. 1, ¶ 23. Those allegations were not included in the Amended Complaint.

regarding "how frequently its customers" engaged in transactions that would be contained in the database, the plaintiff failed to establish a non-speculative injury-in-fact. *Id.* at 148. Similarly, merely alleging "numerous" transactions in an environment of systematic fraud, as Plaintiff does here, is insufficient to allege a non-speculative Article III injury-in-fact. *See Akridge v. Whole Foods Mkt. Grp., Inc.*, 2022 WL 955945, at *7 (S.D.N.Y. Mar. 30, 2022) (holding that plaintiff did not have standing to bring a mislabeling claim where he alleged only that he purchased "numerous" items that the FDA found were part of a "pattern" of mislabeling).

Plaintiff also fails adequately to allege that the fraud was sufficiently widespread for the Court to plausibly infer that because she engaged in an unspecified number of foreign transactions between November 2018 and February 2020, she likely was overcharged. In *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732 (2d Cir. 2017), the Second Circuit held that the plaintiff had met his burden of plausibly alleging injury-in-fact by alleging that he was a monthly purchaser of certain cakes and cheeses that were improperly priced nearly 90% of the time. *Id.* at 737–38. The Second Circuit noted that the "critical" portion of the claim was that the plaintiff had specified not only that he was a frequent shopper, but that he shopped on a monthly basis, and that the systematic overcharging occurred nearly 90% of the time. *Id.* at 736.

Unlike the specificity in *John*, Plaintiff alleges only that her analysis shows that overcharging occurred "on a majority of days" during the period of October 2017 through September 2018 for an unspecified set of currencies; she neither alleges what those currencies are nor whether she engaged in any transactions in those currencies. Am. Compl., Dkt. 39 at ¶ 53. Further illustrating the disconnect between her allegations of a systematically fraudulent market and her own potential injury, she alleges that she began using her Mastercard credit card in November 2018, outside the period she allegedly analyzed. *Id*. ¶¶ 27, 54. Nor do Plaintiff's

allegations approach the facts in *In re Barclays Liquidity Cross and High Frequency Trading Litigation*, in which the court found price distortions on a stock exchange to be so pervasive that it was "almost certain[]" that plaintiffs were victims of the distortions due to their "routine" participation in the stock exchange on which the distortions were occurring.  *In re Barclays*, 390 F. Supp. 3d at 444.

In short, Plaintiff has failed to allege facts from which the Court can plausibly infer either that she suffered a financial injury because Mastercard overcharged her in connection with a particular transaction or that she was injured because Mastercard systematically overcharged all of its foreign exchange customers at a time when she regularly engaged in foreign exchange transactions so that the Court could infer that she likely was injured.

## CONCLUSION

Because the Court is dismissing the Amended Complaint for lack of subject-matter jurisdiction, the Court does not reach the merits of Defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6) and Rule 9(b).

"[W]here a complaint is dismissed for lack of Article III standing, the dismissal must be without prejudice, rather than with prejudice" because "without jurisdiction, the district court lacks the power to adjudicate the merits of the case."  *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54–55 (2d Cir. 2016) (internal citations omitted).  Accordingly, the complaint is DISMISSED without prejudice.

**SO ORDERED.**

**Date:  August 8, 2022**
**New York, New York**

_____
**VALERIE CAPRONI**
**United States District Judge**